Roberts, and may it please the Court, the facts of this case, United States v. Wurie, I think illustrate why any categorical rule that would preclude searches of cell phones, incident to arrest, would be inconsistent with historical practice and detrimental to law enforcement. This is a case where what the United States did was see a phone ringing. On the outside screen, the caller was identified as My House. The officers opened up the phone, pressed one button to see that the call came in from My House, and pressed another to see what the phone number was. That's all they did. That kind of a search serves valid, time-honored functions in the search situation of helping to ascertain the identity of the offender. This was a crucial fact because a few minutes later, Wurie lied about where he lived, which was relevant to the police ultimately obtaining a warrant to search his house. If they didn't know where he was, they would not be able to. Sotomayor I'm not sure if he was at the precinct. They could have gotten a warrant. And once he lied about his arrest, they would have known he wasn't living there and would have gotten a warrant. Justice Sotomayor, you could almost always say in search incident to arrest cases that the police could have gotten a warrant. It's – I'm not talking about cases where somebody is carrying a gun and the police take the gun off them and they secure it that way. But in all of the other cases that you could imagine that involve searches for evidence, letters which occur in the historical cases, bill phones which have been discussed here, once the officer has it, you could say the officer shouldn't be able to look in it because that could be done under a warrant, there's no time constraint, there's no destruction of evidence constraint. Here, in fact, there actually is a destruction of evidence threat with respect to the general category of cell phones, and that's what this Court has been asked to look at, the general category, cell phones and smartphones. We discussed earlier the threat of remote wiping and whether airplane mode is an effective counter to that. There is the other threat that I think is even more critical to law enforcement today, and that is encryption. Because if the phone turns off and becomes encrypted, officers can go to the magistrate and ask for a warrant, but it may be months or years or never if they can break through the encryption and actually obtain the evidence. So to the extent that the traditional destruction of evidence rationale justified the search of a cell phone or justified the search of traditional items, it applies even more strongly with respect to cell phones than it does with most of the items that might be seized from a person. So the worry, I think, please tell me about encryption, because I know people can encrypt, but I thought they had to do that when they put the information in the phone. No. As best I understand it, Justice Sotomayor, many smartphones today are equipped with built-in encryption. Apple has hardware encryption and software encryption. Samsung and HTC and other brands are quickly following with strong encryption. The encryption is deployed in a way that if you don't have the key, the data that's on the phone is useless. The key is often stored in memory, and it's accessible only when you can get into the phone. Now, if the phone is on and functioning because the person has been arrested while they, for example, are making a phone call, you can get access to the phone and you can attempt to get information from the phone without the encryption key being an obstacle. But if the encryption is deployed, that can sometimes be an insuperable barrier even to the manufacturer. Sotomayor, I'm not sure if I'm on the scene the police are going to look at everything in a cell phone anyway. They've got to be doing something to save it. If the encryption can be ---- Well, no. The evidence is encrypted. The information on the phone is encrypted. This is my understanding, Justice Sotomayor. But the phone itself has the key to decrypt it because the user obviously wants to get access to the information. I mean, the problem, apparently neither you nor I actually have this on their phone as far as I know. So I'm imagining something. Maybe you have it. There is some kind of system that once it goes, you never can get the stuff again except after 8 months, and when this bzzz happens, it happens at least 10 minutes after the arrest and not before so the policeman would have time to look at it. But the time they get to the station house, the bzzz already happened, so now nobody else can. Maybe there is such a thing. I've never heard of it before this minute or before the briefs. Why wouldn't ---- you see, I'm somewhat incredulous about it from my tone of voice because I don't see why somebody who wanted the bzzz action to keep the police away wouldn't do it after 30 seconds. So if you have an iPhone, Justice Breyer, and I don't know what kind of phone that you have. I don't either because I can never get into it because the password. It's encrypted. All right. That's the problem. The phones are set up to protect the data, and I think this is something also revealing about CMS. But my point is somebody who really wants to go to all that trouble will surely have it turn off after 30 seconds and the policeman won't be able to look at it after either. Well, not all criminals are so clever that they manage to do the crime. You have the dim criminal who is thinking about the magistrate at the station but not thinking about the policeman. I mean, you see what I'm doing with my questions? I'm casting a little cold water on this as a rationale. Yeah. And I my response to you is that having tried to ascertain the empirical reality of this problem, it is greatly feared by law enforcement. We've documented that by the numerous studies, the National Institute of Standards and Technology study that talks about the grave concerns that encryption has raised. It's not as big a problem if you get the phone in an active state and you can begin to look through it. It does have unpredictable capabilities of becoming encrypted if it's turned off or if certain apps are deployed on it. And for that reason you have to keep the phone going anyway until you can get to a place where you do something with it. A lot of these searches occur, Justice Sotomayor, at the side of the road where the officer opens. In the Riley case, the officer opened the phone right on the heels of the arrest and he immediately saw evidence that the individual was a gang member, something that he hadn't had personal knowledge of before, because every letter K was preceded by a C, which indicated to him it meant crip killer, which indicated he was a member of the Bloods gang. So it's a very common thing for officers to take advantage of the information that's on a phone just the way that they would take advantage of the information that's on a person to find out who they are dealing with. And I think it was asked in the Riley argument whether there were instances in which phones had been used to trigger dangers, and there are instances in which people have used their cell phones right before an arrest to call in a posse of their accomplices to basically attack the police. And by looking at the cell phone quickly, if it's available to the officers, they can look quickly and see if there was a text sent in the last 5 minutes or a phone call that might actually protect their safety, which is another one of the traditional justifications of search incident to arrest. This is a categorical exception, as the Court recognized twice last term, both in the McNeely decision and in the McNeely decision. The Court recognized that search incident to arrest was a categorical exception to the normal warrant requirement. Ginsburg. Mr. Dreeben, something that you said about the encryption, is what is the experience of the police? Isn't it so that most cell phones, when they're found on a person, are not open, that they are locked? Justice Ginsburg, I would not be able to answer a question about what condition most cell phones are found in. The fact that this issue has arisen repeatedly in cases across the country indicates that, at least in a significant number of cases, the phones are not locked and the officers are able to obtain access to the information. Now, if they are not able to obtain access to the information, I want to tie this back to things that could give the Court some comfort if the Court were concerned about the possibility for police searching too much evidence in cell phones that's not relevant to the crime for which the person is arrested or his identity. Now, we talked earlier about the crime of arrest limitation, which I think would screen out a great many, not all, minor crimes. The Court has, at least in the Welsh v. Wisconsin case, talking about exigent circumstances justifying an entry into the home, distinguished between serious and minor crimes. That's another possible line that the Court could explore. I'm not as much in favor of that one because I do think that the officers have an interest in determining, no matter who they have arrested, who that person is, because the person could pose an unknown threat even if they're stopped only for a traffic violation. Ascertaining their identity through their cell phone is a useful way to do that. There are also potential duration limits on a search incident to arrest. As its name indicates, it's incident to the arrest, and this Court's decisions have described the lowering or reduction of expectation of privacy of an arrestee as occurring for a reasonable time and to a reasonable extent after the arrest. Then other Fourth Amendment doctrines kick in. So to the extent that most of these searches are going to occur either at the scene of the arrest. Sotomayor, Once we put in that limit, you'll just download the phone at the station and everything, their medical records, their tax returns, even when they're not relevant to the crime, will be part of your database. Dreeben Okay. Well, that is my last potential limiting principle. This Court need not consider in this case the consequences of downloading the entire contents of a cell phone to a UFED, a universal forensic extraction device, which the briefs have talked about. That didn't happen in either of these cases. These cases involved manual searches of the information that's available to the user of the phone. Once the information has been captured into an electronic database separately through an extraction device, there is at least an argument that at that point the warrant requirement would have a different application, at least if the search of that forensic database was going to go beyond ascertaining identity and verifying officer safety considerations. The Court does not need to examine that in this case. It may well be that expectations of privacy do not exist as to information that the user himself can quickly access on a phone, the kind of thing that the police are likely to look at when they make an arrest, because they're interested in developing evidence that relates to the crime, protecting their safety, and ascertaining identity. They're not really interested in going through all an arrestee's medical records and photographs and so forth. So the briefs suggested a limitation with respect to access to the iCloud. Yes. Could you tell me how you tell the difference? Well, I think that would be something that officers would have to develop protocols based on changing technology to address. We do not claim here the authority to use the phone to access data that is not on the phone in the cloud, and it may well be that in the future more information will migrate to the cloud, less will be on the phone, and that may shift what the officers can actually do. But I thought the whole idea of smartphones, Mr. Dreeben, and increasingly so, is that even the user doesn't know what's on the cloud or not. So to the extent that that is true, Justice Kagan, law enforcement officers, to ensure that they're complying with the Fourth Amendment, would have to take the phone off the network. And that is best practices. It's discussed in all of the forensic manuals that we cited to the Court. You want to take the phone off the network to avoid the remote wiping problem, to avoid corruption of data through new data coming in. It's sound forensic practice to do that, and it also serves what we think is a limiting principle. Again, the Court doesn't have to decide that limiting principle in this case. There's no claim that any cloud data was accessed in this case. We're only saying that the search incident arrest doctrine serves a valuable function, serves a particularly valuable function with cell phones because they are so commonly used as the medium of the commission of crimes. They're carrying the same kind of information that the individual previously would have carried in paper. And it seems somehow a little odd to say that because information has migrated from paper onto a smartphone, that the officers have a critical need to appreciate what's going to be used. Kennedy, I don't think it's odd to say that we're living in a new world. And Justice Kagan's questions point out the fact that someone arrested for a minor crime has their whole existence exposed on this little device. And from your argument, you want us just to adopt a categorical rule, it's in the custody of the police, they can search it. Do you have any limiting principles that we should consider at all as a fallback position? Yes, Justice Kennedy, I do. And the first one that I think has been discussed in both arguments, and Justice Scalia has brought it up as well, is that the evidence to be searched, unless there's some exigency, should be relevant to the crime of arrest, and the Court can articulate that in a way that would prevent roving searches or speculative searches. Well, that was for an expired license. So I don't necessarily Or is it the guns that were under the hood? In this case. In the other case. In the Wiley case, the guns were under the hood, and the arresting officer found a green bandana and some red and white Converse shoes, I believe. The crime of arrest was the expired license. No, the crime of arrest was the firearms in Wiley. It was only after they found the firearms in the in-pound search did they actually conduct the arrest. And at that point, the ultimate search that occurred was because there was a known propensity of gang members to document their use of firearms in pictures. And so that's what the arresting officer was looking for. It's no different than what he would have looked for on the resty's person in his wallet. So it wasn't the kind of cloud-based search, search into health records. It was a scope-focused search. So I think that there are limiting principles, Justice Kennedy, that you referred to. One is when the officer is looking for crime of arrest-related material, and there is evidence that can be plausibly said is crime of arrest-related material on the phone, he can look for that. The Court could couple that if it wasn't satisfied that that was a sufficient limitation with a scope-based limit, which would say that you can't look everywhere on the phone where there's no realistic chance that there's going to be evidence related to the crime of arrest. You can't just rove through the phone. You need to keep a scope focus. And that can be enforced and would be enforced by defendants, I can assure you, through post hoc litigation and suppression. And the police would have to conform their conduct to the constraints of the Fourth Amendment in conducting the search. Ginsburg-Miller You can look at scope. You can look at e-mails, but not something else. What would the scope limitation be? Dreeben It would depend on the crime. So if you were looking for evidence related to the crime of possession of child pornography, you could certainly go through photographs. If you were looking for another crime, potentially drug trafficking, you would look for things like drug ledgers, recent contacts, lists of customers, and not necessarily in videos. Roberts But it's very hard to see how that limit would be applied. You can see, and the police would be able to articulate, why almost every application, every entry in a cell phone would reasonably be anticipated to have evidence of a particular crime, obviously e-mails, obviously call logs. Even, you know, Facebook, I mean, if it's a weapons crime, maybe they've got pictures of themselves with guns. I mean, I have trouble imagining what application, what entry police could not say it's reasonably likely that there would be evidence of the crime. Dreeben So, Mr. Chief Justice, to the extent that you think that that's an inevitable generalization and there is a certain way of looking at it in which that's correct, then the interposition of a warrant requirement would do nothing, because the warrant would say search the cell phone for evidence related to drug trafficking, and then the phone would be searched. Breyer No, the point of the warrant is that a person who's not involved in his objective listens to what the policeman is saying, knowing that sometimes, like me or any other human being, a policeman can get a little carried away. And so if, in fact, he does show the warrant, that there is this basis, you issue the warrant. Many, many, and if he doesn't, you don't. It isn't because they're difficult legal questions. It's just you want that third dispassionate mind to review what the facts are. Now, if that's a purpose of having a warrant, how long does it take to get a warrant in the mine run of these cases? Is it not a matter of hours in most places? Dreeben It may be in some places. Breyer In some places, I'm sure it's difficult. But I'm saying most places, major cities, et cetera, my guess was, and I want to be corrected if I'm wrong, it's a matter of a few hours, and you could do it more quickly if you needed to. Am I right about that? Dreeben I don't know who you are, Justice Breyer. Breyer Well, no, you are in a department that keeps track, pretty much, of you're much more expert than I am. And therefore, I would like your best guess on the mine run of things of a range of time to get a warrant. Dreeben So, Justice Breyer, it varies considerably in the 50 States and the Federal Government, depending on where you are, the availability of magistrates, the complexity of the case. I would differentiate this from the McNeely case, where the Court was pretty confident that you could get a warrant quickly. The reason that the Court could be pretty confident about that is drunk driving is a very simple crime, and the officer has very simple observations in order to validate it, and there are forms that can be prepared to get a warrant. With the great we're talking now about every crime for which people are arrested. Breyer I see your point. I see your point. Dreeben And the facts are going to be much more complicated. Breyer Even in, assume, I'll take that at a rate. My question I'm trying to get to is this. What, from what you've said, is the harm in saying, yes, you need a warrant, but remember, there are exigent circumstances. So where someone, the bell rings on the phone, depending on the kind of crime, it may be pretty important to let the policeman answer to find out where it's coming from, because it may be other people on the gang who are coming with weapons. Or alternatively, if you're right on the technology, it may be someone about to push a buzzer that will erase the information. So remember, we have the exigent circumstances. If your view of the technology is right, they will perhaps be used with common sense and caution, but you don't need a special rule. Other than the rule, get a warrant. And how will that hurt? Dreeben That is a special rule for the search and search and arrest conduct. Breyer I understand that, of course. Dreeben It's true. It's we've discussed a variety of special rules, but that rule completely compromises the interests in search incident to arrest, because they have always assumed that the interest in police discovering evidence that could help them in the prosecution, that could protect their safety, and that would avoid destruction is paramount given the reduced expectations of privacy. Breyer Can you work with exigent circumstances? Dreeben No. And this is why I hope that I can make this clearer, because the encryption problem is what makes it impossible for the police to be confident that you can take the time to go and get a warrant and you won't lose the data forever. Encryption kicks in when the phone is turned to a setting that automatically will occur on most modern cell phones that turns the phone off, and then the phone's password to open it up. And if you don't have that password, you're not going to be able to do it. And law enforcement's forensic labs aren't going to be able to get around it in – except with extraordinary efforts and extraordinary time. So we're not talking about the difference here between two minutes to go get the warrant and looking at the information. It may be months if you don't take advantage of what you're getting. Sotomayor How do you stop it from going off? Dreeben Now, I think that one of the interesting things that Petitioner did in the Riley case was append to the back of his brief a couple of pictures of Apple's iPhone 5 on how you could go into the phone if the phone is configured in the way that it was in the pictures that he took, and disable the auto lock feature. What Petitioner did not do was provide similar information for the 500 or so other phones that are on the market, and that will be on the market in the coming years, so that police officers will be equipped with a manual that will probably be as thick as the New York City telephone book, with the various procedures that are needed to prevent any phone from going into an encryption mode and becoming inaccessible. They don't know that at the time they seize the phone, Justice Breyer, and that's why exigent circumstances, unless it's done as a categorical rule, because I did not know whether this phone would encrypt, I searched it, unless you do that, then you are basically putting the officers at the mercy of technology which will increasingly be able to defeat their ability to conduct the kind of routine searches that they have always conducted. Roberts. They've got their own technological front in this battle, too, and that's, I mean, to the extent there are flaws in the Faraday bag, I wouldn't be surprised if that's not improved over the next months or years or whatever. Mr. Chief Justice, it's an arms race between the forensic capabilities of law enforcement labs and the abilities of cell phone manufacturers and criminals to devise technologies that will thwart them. And they will leapfrog each other at times, and there may be periods when law enforcement has the advantage, and there may be periods where those people who want to protect against revelation of data on the phone will succeed. And my only point here is that it would not be a wise rule for this Court to announce, based on today's technology and reasonable projections of technology, that the police will just easily be able to go and get a warrant. Because my experience from the people that I have spoken with is that a lot of phones are arriving at the lab in a locked and encrypted state, and it's very tough to deal with that. And if the Court does have concerns, as many members of the Court have expressed, about applying lock, stock and barrel, the traditional Robinson rule, there are way stations and compromised positions. This case, I think, as California pointed out, both this case and Riley, don't really involve totally unpacking somebody's life from their smartphone. And I'm not suggesting that the Court should resolve these cases by announcing a rule that's just limited to the facts of the cases, but if the Court is looking to preserve some areas for protection, we've talked about limiting the justification for a search, limiting the scope of a search, limiting the duration of a search, and limiting the intensity in the sense of confining it to what can be found manually on the phone. Breyer. Do you see what I was trying to do with the word exigency? I was trying to figure out if that's a way of dealing with the unknown here, which is your problem, that if, in fact, technology is such that the policeman, it's really true, if he has five minutes to search, he can get this valuable evidence, and if the doesn't even give him five minutes, or if it's such that it gives him four or five hours, or if it's such that he can press a button, or if it's the opposite and they can just cough and encrypt it, well, all that will be fed into the word exigency, which we wouldn't have to decide now. But rather, you could make your arguments about the real exigency for preventing the destruction later in the context of what turns out to be the technology of the time. But that's what was going on. Dreeben. Justice Breyer, the reason why Robinson adopted a categorical rule is it concluded that such case-by-case adjudication for officers in the field is completely infeasible. And when balancing the important law enforcement interests against the reduced expectations of privacy, Robinson struck a categorical balance, reverting to an exigent  view analysis. Turn on the phone. See if there's been a telephone call within a reasonable amount of time of the arrest, or any message that was sent at the time of arrest. That's sort of a plain view situation. It would take care of your person with the picture of him or herself with guns. It would take care of the call to the confederate. It would take care of the eminent destruction of the phone. So, Justice Sotomayor, I'm not entirely sure how to articulate that principle, but if it fits within the crime of arrest plus identity principle, then I think it would be a reasonable fallback position, if I could reserve the balance of my time. Roberts. Thank you, counsel. Ms. Misner. Mr. Chief Justice, and may it please the Court. I'd like to first talk about the encryption that we've been discussing. It's not an issue in this case. It was not an issue in Riley. It was not litigated below. And the government has just now said that there are a lot of phones arriving at a lab in a locked state, but do we know whether they're in a locked state because they were locked at the time that they were seized, or did they lock subsequently? The number of password-protected phones that are open at the time of arrest is pure speculation, and if they're not open at the time of arrest, the government's argument about locking is irrelevant. The number of password-protected phones that would be inaccessible at a later time is also an unknown and speculative quantity. There are devices that can break passwords. Technology advances on both fronts. I believe that the government has capabilities of breaking the more typical passwords, the four-digit or letter passwords, within 15 minutes. There are assist — you can obtain assistance from manufacturers in obtaining the passwords and ability to communicate. Roberts. Roberts. We've kind of gotten far afield, which I'm sure is not — may not be fair to Mr. Fisher or Mr. DeMont. We're talking about their case. But in your case, why isn't the information in plain view? It says, my house, my home. They look at it, that's what they see. They don't have to open anything. They saw the words, my house. They did have to open the phone and act upon the law to do it. Sure. But I'm saying you have no objection to the my house? The my house words were in plain view. And under this Court's doctrine, that's not historical. I assume that that's — it says my house because he's done something with the particular number. If he didn't, it would be the number itself that would show up, right? Yes. And that's part of the case. And so that would also be in plain view? The number was not in plain view. No, no. But I mean, in a case in which the user had not coded the particular number, the number would show up, I think, right? Yes. And that would be in plain view. But what makes the privacy interest and the associational interest in simply the call logs, which the government has talked about in Mr. Worry's case, is that it does contain more than simply the numbers dialed. You have the associational information that's created by the user. In this case, it was linking my house to a particular number. It can go well beyond that. You can link names and nicknames to — and places to a number. You can link e-mails to a name and a number. You can link a relationship to a name and a number, doctor, shrink, mom, dad. You can link a photograph to a number. You can link your number — you can link it to text messages. You can link it to other numbers. So you can provide pattern and also patterns of calling that provide additional associational data and could indicate the closeness of a relationship. How often calls are made? When are they made? What's the time of the call? When did it start or stop? The length of the call. You can link notes, either general or about a particular phone call. What do you think, if the phone rings, can the police answer it? The cases that have addressed answering the phone have been in the context of search warrants for houses where, as the police are searching the house, the phone has been ringing. And the courts have said that — lower courts have said that where answering the phone can be viewed as being within the scope of the search warrant, it is permissible for the police to answer the phone. Well, what about this case where there isn't a search warrant? The number is in plain view. I mean, is answering the phone — can you do it or not? You know what number is calling? Is it like someone you're conducting a search in a house and somebody knocks on the door? You can open the door, right? Yes. And they perhaps could have answered the phone in this case, but they didn't. Well, what is your position? What is the rule you want us to adopt in response to the Chief Justice's question? I would say that they could answer the phone. I don't disagree. I just want to know what would be your theory and what's the limitation? Well, in a sense, it's plain hearing. It is an analog of plain view. There is nothing particularly private about the ringing. And if the policeman can't answer the phone, it doesn't mean that the person on the other end has to respond. It's — I was thinking in terms of reasonable expectation of privacy, most people don't pick up other people's phones to answer them, unless the phone is lost. And then you pray the person who found it answers it. And perhaps this would be analogous to that. So the law says that. It's got nothing to do with plain hearing. I'm not saying they can't. Obviously, they can hear the ring. I'm just — it's a big different step to answer it. If the police have seized the phone and they can secure it pending application for a warrant to engage in a search of its contents, then answering the phone could be viewed as part of securing. Does the owner of the cell phone have a reasonable expectation of privacy in the call log? Yes. I believe for the associational data and reasons that I have just articulated that there is an expectation of privacy in the call log. But the cell phone company has all that information, doesn't it? No. The cell phone company has the numbers. Has the numbers, but it does not have that. Does the owner have a reasonable expectation of privacy in a list of the numbers called? Not in the list of the numbers alone. But the call log is not limited to that list of numbers. And your phone bill may not necessarily include, depending on the kind of plan you have, may not include information about the length of the call or — The cell phone company won't have information about the length of the call? I think it would depend on whether they keep that information. It would depend on what kind of plan you have. Well, what are we dealing with here? I know everybody wants to talk about global issues, but what are the — what information are we talking about in this case? We have my home, which you said is in plain view, my house. And then you have the call log. What else do we have? That was all that was accessed. We're talking about the phone number that allowed the police to get to a particular premises. Well, if the call log, the numbers called, is not covered by a reasonable expectation of privacy and my house is not covered by a reasonable expectation of privacy, then where is the search? The search is in opening the phone itself, which is covered by a reasonable expectation of privacy. And you couldn't do that to look for a razor blade? You could. You are then looking. Open the old-style flip phone to see if there's something inside. Yes. You could examine it, but that is not going to get you the phone number. You had to push — the officer here had to push a button in order to get access to the call log. So there were two buttons. So you have a reason. But what is the reason? By pushing the button, you get information that you just told me is not covered by a reasonable expectation of privacy. No, Justice Alito. I believe I said that the information is covered by a reasonable expectation of privacy because there is associational information that is inputted by the owner. Yes, but was any of that used here? It was the link between my house and the number, yes. But you wouldn't know that it was my house, absent the information that the owner of the phone had given you. Why is that so? Maybe I don't understand the facts.    of the phone had given you. Why is that so? If you go right now and you look at the call log and you see what call came in at 1213, and you know that the call came from my house and you see the number of the call that came in at 1213, wouldn't you know that that was the number from my house? But you wouldn't know from the call log alone without information input by the phone you would have the number itself in plain view. Yes, but you would then you could go to some kind of reverse directory to get an address, but you have no what is the reason to believe that that number has anything to do with the defendant's house. Can the police search a person's wallet and find an index card with a number my house? Can he do that? I believe. And use the information obtained? I believe that the police can examine the contents of the wallet. Examine the contents of the wallet but not read it? I don't understand. May the police or may not the police examine a wallet, find the number that says my house, and act on that information to investigate the crime, yes or no? This Court has not addressed the reading of information examined in searching for information. Well, it seems to me that it's fairly clear that it's part of the contents that are seized that are on the in the possession of the arrestee and that the police can act on it. Under the justifications of Schimel and which were reiterated in Robinson and in Gant and McNeely, the justifications are officer safety and evidence preservation, which does not necessarily encompass reading. But to address the case of the cell phone, I don't think you have to resolve whether it's appropriate to read paper documents that you come across in examining the parents' house. No, but the point is the only information they got and used was the phone number and address of his house, right? And that it was his house, right? That's on your driver's license, isn't it? So and your residence is, but this was not then they needed his driver's license, which they had. So I guess I'm just trying to see what greater invasion of privacy there was in this case than the police looking at your driver's license when you're carrying it around in your wallet. Because my house may not necessarily be the house in which you reside. You may have chosen to attach that description to someone else. So the problem here was that he called he indicated that a number was his house and it might not have been his house? The problem is that the police searched his phone in order to associate information contained in the phone with what they were able to observe in Blankview. Breyer, two buttons, two buttons. Now, was there a claim made in this case that exigent circumstances, destruction of evidence or officer's safety justify the search? No. No. Okay. So I guess that if there is a rule that says you can search phones, then you could do it. After all, you might search a phone and come up with an advertisement for a Walt Disney movie, which is perfectly public. But if the rule is you can't search phones, then you win, even though in this case they came up with something that was the — is that right or not? Yes. I mean, if in fact you can search the phone thoroughly for everything in the person's life, they might have come up with something when he was 6 years old, there is in fact a picture of an elephant at the zoo. Totally public. But it would still fall within the rule, which was what I thought one of the things were arguing about in this case. Yes, Justice Breyer. And we believe that the seize and secure rule that we are proposing meets the needs of law enforcement by allowing them to maintain custody. Well, what is your argument for the proposition, look, when you search a phone, sometimes what you come up with is perfectly public information. Sometimes what you come up with is private information. Now, you want to say the absolute rule should be no. Well, what's your argument, rather than trying to say sometimes if you get the private information, no, but if you get the public information, yes, et cetera? Because everything is so intermingled on a cell phone or a tablet or a computer, you don't know what you're going to be getting when you push those buttons and start rummaging through the digital contents of the phone. In determining whether the examination of information on a cell phone is – constitutes a search, what do you think we are doing? Are we trying to – are we answering an empirical question, what is the reasonable expectation of privacy of a person in 2014 who has a cell phone in his or her – on his or her person? Or are we legislating what we think is a good privacy rule? I think the Court is determining whether or not in 2014 an individual has a reasonable expectation of privacy against government intrusion into a device that carries around an increasingly large percentage of somebody's personal privacy. All right. Well, a lot of that – part of that is the person must act – people must actually have that expectation. That must be the expectation of people at large in 2014, that they think that everything that's on their cell phones is private, or they think some of the information on the cell phones is private, or they think nothing on the cell phone is private. Where do you think we should look to answer that question about what people in 2014 think about that question? I think from the fact that people carry them with them in a pocket or in a purse, that that exhibits an expectation of privacy. You don't expect people to be rummaging through your pockets or through the item you're carrying. But why is that so? Cell phones are different. I'm not going to say for a – suggest for a second that they're like things that existed in the pre-digital era. But in the pre-digital era, presumably people didn't have a reasonable expectation of privacy in papers, letters, things like that, that they had, photos in a billfold, numbers, addresses, things that they might – they might be carrying on their persons. So how do we determine what the – what the new expectation of privacy is now? I think people did have an expectation of privacy in those items until— Alito, when you search the pocket of somebody who was arrested and you found the address of some place. I believe it is a search, Justice Alito. It's a question of whether it is a search that has been justified by an exception to the warrant requirement, the scope, the permissible scope of the search incident to arrest. It's still a search. All right. What was the – how do we determine whether something has – somebody has a reasonable expectation of privacy in any category of information that is contained on a cell phone? Because of the interconnectivity of the data, I don't think you can say a person has a reasonable expectation of privacy in this app, but not that app, because you don't know what is linked to any other part of the cell phone. So the rule that provides the security that the Fourth Amendment is intended to give an individual would be— Are you – I'm assuming that what you're saying, and you just said it a minute ago, the Fourth Amendment, the search as incident to arrest are an exception to the Fourth Amendment. Yes, Justice Sotomayor. And is it your position – I'm assuming that's what this argument's been about, which is whether we're going to extend that exception of the exception of search as incident to arrest to a new category, cell phones, which are different than the traditional item. Whether the scope of a justifiable search incident to arrest is going to include a search of the cell phone. Why do you say they're an exception to the Fourth Amendment? They just don't violate the Fourth Amendment. I mean, the Fourth Amendment covers certain things and it doesn't cover other things. The things that it doesn't cover are not exceptions, they're just things not covered. Well, this Court has espoused a warrant presumption and has said, has classified the search incident to arrest, exigent circumstances, as exceptions to the warrant requirements, saying that the preference is for a warrant to be obtained and under certain well-defined circumstances, we are going to say that you need not. That presumption is simply not – you don't believe that presumption, do you? I do. I mean, there are many more searches conducted without a warrant than with a warrant, I bet. I mean, any automobile search, any inventory search, any search of businesses, all sorts of searches are conducted without a warrant. But you still believe that a warrant is the rule and everything else is the exception. I think it may be the opposite, actually. Well, it's the exceptions that swallow the rule. And the exceptions – viewing the search incident to arrest exception as having limited parameters, as the First Circuit did. The question is whether it's an unreasonable search. And the warrant clause follows much later. The question is, is this an unreasonable search? That's what the Constitution provides. But this Court has said in many instances that a search not conducted pursuant to a warrant is unreasonable unless it falls within one of the well-defined exceptions that this Court has recognized to the warrant requirement. Well, it's a search that's reasonable. That's not necessarily an exception. But in terms of reasonableness, this Court is balancing the intrusion against the individual's interests in privacy. Yes. And that's the – And traditional balancing test. And we suggest that balance here supports the seize and secure rule that we are advocating. No, I understand that. But that's the question that I was asking before. Is it a reasonable search or seizure? All right. So you have to balance the privacy interest versus the law enforcement interest. And how do we find out what the privacy interests are, what the privacy expectations are, which go into that balance with respect to cell phones in 2014? Does it matter? Do you think it doesn't matter? Maybe people feel very strongly every single thing that's in the cell phone is private. Or maybe they don't. Maybe they think some things are private, some things are not private. I think that by virtue of the fact that you carry them around in a – generally a closed container, a pocket, a purse, a briefcase, that that exhibits, that is an indication that people expect that the cell phone, that the information contained on their cell phone is private. Well, as opposed to what? Carrying it around somewhere other than your pocket? I mean, do you think there's a difference if it's attached to someone's belt and everybody can see it, or if it's in a pocket? No. I believe that because you're carrying it with you, it is – it's not something that you are exhibiting to the public. You're not exhibiting the contents of the phone to the public. Surely it's more private if it's locked in your car or kept in your house. Yes. Carrying it with you in public makes it less private. But you're not – it may be less private, but that doesn't mean that you don't have a reasonable expectation of privacy against people taking it from you and starting to intrude and – and rubbish to its contents. But you're not questioning the ability of the police to take the phone. I thought that that was a given, that incident to the arrest, the police could take the phone. The question is whether they can search it without a warrant. Yes, Justice Ginsburg. I was responding in terms of just a general expectation that people are not going to – if you – because you're carrying a phone in public, it doesn't mean that you expect that people are going to walk up and remove it from your belt or remove it from your pocket and start – Well, it's clear you could say the same thing about a cigarette pack that has cocaine in it. Or a gun. Or a gun. And the police may seize and examine those containers to see whether or not – Right. And why not the phone. That's exactly the question. Do you have a reasonable – our rule has been if you carry it on your person, you ought to know it is subject to seizure and examination. And that's been the rule. It's the scope of examination that we – that is at issue with a cell phone. A cell phone is fundamentally different from a cigarette pack. You can open the cigarette pack. You see whether or not there is something that is subject to destruction. But whether there is – And you can open a cell phone and see what's ever in it. So if you carry around a cell phone that isn't encrypted or whatever, you know, you get what you – what you should have expected. That's been the rule. If you're arrested, we can seize it and examine it. The question is what is the scope of a permissible examination. And when you're talking about a cigarette pack, you're looking at another physical object. You're not looking at the contents of somebody's phone. I understand, but you – so you're arguing for a new rule. The rule up to now has been you can – we can seize it, we can examine it totally. If it's a book, we can read every page of the book. You want a new rule for cell phones, right? We want a rule that says that you cannot search the contents of the cell phone without a warrant. At all. At all. On absent exigent circumstances. What would be an exigent circumstance where you could search, in your view? An exigent circumstance. You said you have – you are arguing for a flat rule to the police, thou shalt not, unless there are exigent circumstances. So what would be an exigent circumstance where the police, without getting a warrant, could search the cell phone? One would be an example of police are investigating a bombing, an upcoming, a potential bombing, and they have information that the – that whoever is going to set off the bomb is going to – may do it with a cell phone and is going to be in a particular place at a particular time. And then, if you have a bomb, you see someone approaching with a cell phone, then suggest that under those circumstances you could take whatever measures you needed. It's not a bomb, but this is a different case. This is somebody in an area selling drugs where the police have told us they typically use cell phones to arrange the deals and the transfers, and this guy is caught with two cell phones. Why would he have two cell phones? Many people have more than – have multiple cell phones. I – there was no – Really? What is your authority for the statement that many people have multiple cell phones on in person? Just observation. But you've observed different people from the people that I've observed. Particularly since they're in their pockets, right? But it does – do you – is it insignificant in your view that the cell phone was a method for which criminal transactions were typically undertaken in this area and that the fellow had two cell phones rather than what I would have thought is the more normal one? Yes. I don't believe that that should be a criteria justification for searching either cell phone. The – it may be convenient for the police to get information related to a crime by searching without a warrant, but this Court has said repeatedly that convenience and efficiency don't override individual constitutional rights. And sanctioning a general evidence-gathering search of the entire contents of a cell phone, given the current expansive nature of those contents, is an unwarranted expansion of a traditional search incident to arrest, because we are not talking about the kind of traditional containers that hold limited finite quantities of usually other objects, and there is nothing – a seize and secure rule protects both the individual's expectations of privacy and security and the government's right to obtain evidence consonant with the protections of the warrant requirement, giving the neutral magistrate an opportunity to determine whether there is probable cause for the search of the cell phone and to define the limits of that search. Mr. Dreeben, you have four minutes remaining. Mr. Chief Justice, and may it please the Court. A search incident to arrest has always been considered a reasonable search within the meaning of the Fourth Amendment, and I think this case illustrates why that principle well applies to it. This is a very big confusion of the Fourth Amendment. The Fourth Amendment doesn't permit reasonable searches without a warrant. It says you need a warrant for all. We've created exceptions to that, but not because a search is reasonable. Virtually every search could be reasonable without a warrant. If you've watched somebody selling drugs, it's very reasonable to go into their house, but absent the exigent circumstance of the drugs disappearing, you can't. So I don't talk about reasonable searches. I talk about the art. The Fourth Amendment doesn't actually say you do need a warrant. It does protect the right against unreasonable seizures, and it describes what warrants must contain. Scalia, That's the only thing it prohibits is unreasonable seizures. Dreeben, That's the textual prohibition. This Court has created language in its jurisprudence that prefers warrants in certain circumstances, but as the Court recognized in McNeely last term and in Maryland v. King, the search incident to arrest doctrine is a categorical exception. And this case illustrates why. The information that was found on the phone was very time sensitive and important to law enforcement. It helped fulfill the typical purposes, the categorical purposes of the search incident to arrest doctrine. It helped verify identity. It helped solve the crime for which the individual was arrested. And it was done in a reasonable and nonintrusive manner. There was nothing about the search that exposed reams of private data to view. To the extent that the data was not in a call log, really subject to a reasonable expectation of privacy at all, it was discovered in a search, but I think that underscores why the search was limited and reasonable. So this case really, I think, exemplifies why a categorical rule that Respondent urges in this case would not be appropriate. And we submit that the – this Court should reverse the court of appeals. Thank you. Roberts. Thank you, Mr. Dreeben. The case is submitted.